1830.

Ward
v
Van Bokkelen.

---

## WARD vs. VAN BOKKELEN and others.

Where there is an absolute assignment of a chose in action, and the assignor claims no interest therein, he is not a necessary party to a bill filed to recover the amount due.

The assignee of a chose in action is now considered the real party to the suit, as well at law as in equity; and the defendant may plead and give in evidence any matter of defence which exists in his favor against the assignee.

A fair and bona fide purchase of a chose in action in the ordinary course of trade or business, or for the purpose of securing an antecedent debt, is not unlawful.

But the purchase of a mere foundation of an action by a party who has no interest in the controvery, with the express object of commencing a suit thereon, and for the purpose of harrassing a defendant or of speculating out of the litigation, is illegal; and a court of equity will not sustain a suit in favor of such purchaser.

Where property has been frequently conveyed by an insolvent debtor who afterwards obtains his discharge under the act, his interest in the property passes to his assignees for the benefit of his creditors, although such property is not embraced in the inventory.

In January, 1807, Samuel Beebe filed a bill in this court against Thomas Post, and the second of November thereafter obtained a decree against Post for $3290,98, together with his costs to be taxed. At the time that decree was entered, Post was the owner of considerable real estate in the city of New-York, which, on the 11th of November, 1807, he

July 6th.

1830.

Ward
v.
Van Bokkelen.

conveyed to his mother in law, Elizabeth Morris. Shortly after this conveyance, Post applied for a discharge under the insolvent act, (three fourth act;) and in November, 1808, upon making an assignment of all his estate, agreeably to the provisions of that act, he was discharged by the recorder of New-York. In 1811, Mrs. Morris obtained from the corporation of New-York a grant of the water lots in front of the lands conveyed to her by Post. In 1820, she borrowed money from The Fulton Fire Insurance Company to pay for the expense of filing in the water lots, and she gave the company a mortgage on the lots as security for the money loaned. She afterwards mortgaged the rear lots, which were conveyed to her by Post, to the New-York Insurance Company to secure a loan made by her from that company. Post died in 1815, intestate, and without leaving any property. In 1822, Beebe also died intestate. Mrs. Morris continued in possession of the property until her death, in April, 1823. By her will she directed her executors to sell this portion of her real estate, and to pay off the incumbrances out of the proceeds of the sales. The residue of the purchase money, after paying her debts and a few specific legacies, she directed to be divided between her four daughters. After the death of Mrs. Morris, the mortgages to the two insurance companies were foreclosed, and most of the property was sold under the decrees of foreclosure. After paying the mortgage monies with interest and costs out of the proceeds of such sales, a large surplus remained. In October, 1823, Kennith H. Fish, described in the letters testamentary as a friend of S. Beebe, administered on his estate, and for the consideration of $100 assigned the decree against Thomas Post to the complainant. The complainant afterwards, in May, 1825, filed his bill in this cause against the executors and devisees of Mrs. Morris, charging in said bill that the conveyances of November, 1807, from Post to her were fraudulent and void; and that they were made for the purpose of preventing Beebe from obtaining satisfaction of his decree by a sale of the premises. And the complainant prayed that the conveyances to Mrs. Morris might be declared fraudulent and void; that the premises might also be declared to

have belonged to Thomas Post at the time of his death; and that the complainant might be adjudged and decreed to be entitled to an execution upon the decree so assigned to him against the lands remaining unsold, and that the surplus monies raised on the mortgage sales might be applied towards satisfying that decree. The complainant also prayed for an injunction, and for general relief. The defendant Mary Post suffered the bill to be taken as confessed against her. The defendants Van Bokkelen and wife, Sarah Morris and Ann Morris, the three latter being the daughters of Mrs. Morris and executors of her will, put in their answer denying all knowledge and belief that the conveyances to Mrs. Morris were fraudulent, and alleging that they were made to secure and pay a just debt due from Post to their mother. These defendants further insisted by their answer, that if any assignment of Beebe's decree had been made to the complainant, it was made for a small or nominal consideration at the instance of their sister and co-defendant Mary Post, the widow of Thomas Post, and with the sole view of harrassing and disturbing them in their title to the property under the will of their mother. The cause was heard on pleadings and proofs as to these defendants.

*W. T. M'Coun & G. Griffin*, for complainant. The deeds from Post to Mrs. Morris were fraudulent and void, being given with intent to defraud creditors. There is no evidence that Mrs. Morris paid any consideration for these deeds. She had no means out of which to make such payment. And there is no evidence of any antecendent debt due her from Post, or that the premises in question were conveyed to her in satisfaction of, or as security for such debt. After the deeds were executed, Post continued to receive the rents and profits of the premises. These deeds were evidently given with intent to defeat creditors; if so, it is immaterial whether a valuable consideration was paid or not. Post intended to defeat the recovery of Beebe's decree, and Mrs. Morris by purchasing with a knowledge of this decree is implicated in the fraud. Whenever a purchaser buys with intent to defeat a judgment, already recovered or

*margin:* 1830.

Ward
v.
Van Bokkelen.

1830.

Ward
v.
Van Bokkelen.

about to be recovered, the deed to him will be void. And where there is an outstanding judgment, and the purchaser does not pay the full value of the premises, the law will imply that he agreed to pay the judgment. To constitute a bona fide purchaser, it must be shown that he had actually paid the purchase money before notice, and had not merely secured it to be paid. A party will be charged with notice where he acts in the face of facts and circumstances which were sufficient to put him upon inquiry. (Sugden's Law of Vendors, 490, 1, *Beals* v. *Guernsey*, 8 John. R. 52, 446. *Anderson* v. *Roberts*, 18 John. R. 515. *Anderson* v. *Van Alen*, 12 John. R. 345. *Sterry* v. *Arden*, 1 John. Ch. R. 267. *Jewett* v. *Palmer*, 7 John. Ch. R, 65. *Briscoe* v. *Clarke*, 1 Randolph's R. 213. *Alden* v. *Gregory*, 2 Eden's R. 285, per. Ld. Ch. Northington. *Jackson* v. *Myers*, 18 John. R. 425. *Wickham* v. *Miller*, 12 John. R. 320, 4. *Jackson* v. *Mather*, 7 Cowen's R. 301. *Jackson* v. *Terry*, 13 John. R. 471.) Undocketed judgments will bind a purchaser with notice. A decree is equal to a judgment not docketed. (*Harvey* v. *Mountague*, 1 Vernon, 57. 2 Ch. Ca. 48. *Davis* v. *The Earl of Strathmore*, 16 Ves. R. 419, 428.) It was not necessary to show in the bill that an execution had been issued upon the decree. A decree is not like a judgment at law, where it is incumbent upon the creditor to exhaust his remedy at law before he comes into chancery. It is incidental to the power of this court to defeat schemes to defraud decree creditors. And it is sufficient to give this court jurisdiction that here is a cloud upon the title. But it appears by the answer that an execution was issued upon the decree. The objection that no execution was issued can only be raised where the party puts himself alone upon the fact of issuing the execution. Here we put ourselves upon the fraud, which is always a ground of relief in this court. It was not necessary to make the assignees of Post parties. Non constat, all the debts signed off accrued subsequent to the execution of the fraudulent deeds; if so, the assignees had no interest, provided they had notice of the deeds. But it does not appear, either in the bill or answer, that there were any assignees. And besides, this objection of the want of proper parties can only be taken advantage of

by demurrer. The court cannot take notice of the consideration of the assignment to the complainant. The purchase of the decree was like the ordinary case of buying a debt for less than the amount due.

*W. Slosson*, for defendants. The complainant must rely upon the strength of his own case ; and not having shown the issuing of an execution, so as to give him a specific lien on the land, previous to the filing of the bill, he cannot succeed. (*Brinkerhoff* v. *Brown*, 4 John. Ch. R. 671. *Williams* v. *Brown*, 4 id. 682. *McDurmutt* v. *Strong*, 4 id. 687. *Hadden* v. *Spader*, 20 John. R. 554. *Beck* v. *Burdett*, 1 Paige's R. 305.) Decrees in chancery are not liens upon real estate, unless the proceeding is in rem, and then the filing of the bill produces the lien. The lien, in ordinary cases, is created by pursuing the decree to an execution and a levy. An execution out of chancery is a modern proceeding. It is a creature of the statute, and it produces no lien until an actual levy. The statement in the answer as to the issuing of the execution cannot aid the complainant. He must recover upon the case made in his bill, and not upon the admissions in the answer, nor even upon the proofs taken. (*James* v. *McKernon*, 6 John. R. 548. *Gouverneur* v. *Elmendorf*, 5 John. Ch. R. 79.) If the complainant had no lien upon the premises, the interest of Post passed to his assignees, and there is a defect of parties. If this objection cannot be raised upon the pleadings, then it is incumbent upon the defendants to object that the legal representatives of Post have not been made parties. The assignment of the decree to the complainant was maintenance at common law. It was the purchase of a contested debt, not to secure creditors, but to benefit strangers. *Stevens* v. *Bagwell*, 15 Ves. 140. *Wood* v. *Downes*, 18 Ves. 125. *Strachan* v. *Brander*, 1 Eden's R. 303. *Arden* v. *Patterson*, 5 John. Ch. R. 44. *Powell* v. *Knowler*, 2 Atk. 226. *Wallis* v. *Duke of Portland*, 3 Ves. jr. 494. *Reigal* v. *Wood*, 1 John. Ch. R. 402.) Here was at least such a gross abuse of duty on the part of the complainant as not to entitle him to relief. He paid a mere nominal consideration for the decree ; and he appears here in the

1830.

Ward
v.
VanBokkelen.

character of a depredator upon orphans, a mere volunteer in a scheme of iniquity. In such cases, the court always refuses to interfere. Mrs. Morris was a creditor of Post, and had a perfect right to take a conveyance of his real estate to secure her debt. Her case was different from that of a mere volunteer purchaser. A creditor may take an assignment of property from his debtor to secure his debt, although the debtor at the time avows that his intention is to defraud his other creditors. A debtor may prefer one creditor to another; and a bona fide purchaser for a valuable consideration from a fraudulent grantor, without notice of the fraud, cannot be disturbed in his purchase. Mrs Morris had no notice of the frudulent intention of Post. (*Moran* v. *Dawes*, 1 Hopk. R. 365. *Wiggins* v. *Armstrong*, 2 John. Ch. R. 144. *Phœnix* v. *The Assignees of Ingraham*, 5 John. R. 417. *Wilder* v. *Winne*, 6 Cowen's R. 284.) Mrs. Morris took there conveyances from Post with no other view than to secure her debt against him. There was no fraudulent intention on her part. The decision of the recorder against the alleged fraud, after a lapse of 20 years, is overwhelming in its nature. After such a lapse of time, the presumptions are against the fraud. (*Morse* v. *Royal*, 12 Ves. 377, 8. *Underwood* v. *Lord Courtown*, 2 Sch. & Lef. 41. *Pickering* v. *Lord Stamford*, 2 Ves. jr. 583.)

THE CHANCELLOR. If the transactions to which the pleadings and proofs in this case relate were of recent occurrence, the weight of testimony would certainly be against the validity of the conveyances of November, 1807. There is certainly much reason to suspect that the property was conveyed to Mrs. Morris for the purpose of defrauding Beebe of his debt. But considering the staleness of the transaction, the fact that an investigation took place before the recorder a few months after the conveyance of the property, and the extraordinary circumstances, under which this claim is now brought forward, if the decision of the cause turned upon the question of fraud alone, I should not think myself warranted in setting aside the conveyances without giving the defendants an opportunity to examine the witness openly in the

presence of a jury. Before a feigned issue can be directed to try the question of fraud, it becomes nececessary to examine some of the other points raised by the pleadings and proofs in this cause, for the purpose of ascertaining whether the establishment of the fraud will entitle the complainant to the relief asked for here.

It is objected, among other things, that the assignment of the decree to the complainant was void, on the ground of champerty; and that the assignor should have been a party to the suit. By the ancient practice of the English court of chancery there is no doubt that the assignor of a chose in action was a necessary party to a bill to recover the amount. And as late as 1792, in the case of *Cathcart* v. *Lewis*, (1 Ves. jun. 463,) Lord Thurlow allowed a demurrer to a bill filed by the assignee of a judgment, because the assignor was not made a party. Though some years previous to that time Lord Hardwick had declared it was not necessary in every case to make the assignor a party, where all the equitable interest had been assigned. (*Brace* v. *Harrington*, 2 Atk. 234.) In 1802, in the court of errors of this state, there was a difference of opinion among some of the judges as to the necessity of making the assignor of a mortgage a party to a bill of foreclosure brought by the assignee. (*Johnson* v. *Hart*, 3 John. Ca. 322.) But at this day the rule is well settled that where there has been an absolute assignment of all the interest of the mortgagee in the debt secured by the mortgage, he is not a necessary party to a bill to redeem, or to a bill of foreclosure. (*Chambers* v. *Goldwin*, 9 Ves. 269. *Newman* v. *Chapman*, 2 Rand. Rep. 93. *Whitney* v. *M'Kinney*, 7 John. Ch. R. 144.) The reason why it was formerly considered necessary to make the assignor of a chose in action a party to a bill in equity brought by the assignee, I apprehend, must have been that courts of law did not sanction and protect such assignments; considering them a species of maintenance. And the assignor having the legal title or interest in the thing assigned, he might sustain an action at law thereon, notwithstanding a decree in equity to which he was not a party. This reason has long since ceased, as it is now well settled, at least in this state, that after an absolute

1830.

Ward
v.
Van Bokkelen.

assignment of a chose in action, the assignee, at law as well as in equity, is considered the real party to the suit; and the defendant may plead and give in evidence any matter of defence which exists in his favor against the assignee. A decree in equity between the defendant and the assignee would now have the same effect in court of law as if the assignor was a party to such a decree; the fact of the assignment being first established. In *Cobb* v. *Thompson*, (1 Marsh. Kent. R. 508,) the assignee of a judgment was permitted to file a bill in chancery, in his own name, without making the personal representative of the assignor a party. If there was any controversy between the assignor and the assignee in relation to the fact of the assignment, or as to the right of the latter to the chose in action, this court, in the exercise of a sound discretion, might require the assignor to be made a party, so that both might be bound by the decree. But in a case like the present, where there is an absolute assignment in writing, and when there is nothing in the pleadings or proofs to induce a belief that the assignor has not parted with all his interest in the subject matter of the suit, it would be an unnecessary and useless expense to make him a party.

The question as to the legality of the assignment in this case is not so clear. There can be no doubt of the fact that the assignment was obtained for the express purpose of commencing a suit, to endeavour to set aside the conveyances to Mrs. Morris on the ground of the alleged fraud. There was no longer any hope of obtaining any thing on account of that decree except by a litigated suit. Post was discharged under the insolvent act, and had died insolvent many years before. The purchase of this antiquated claim was undoubtedly made for the benefit of Mary Post, one of the defendants; and there was not the least possibility of recovering any thing unless she could show that her mother had committed a fraud, and that her husband had been guilty of perjury. Neither the complainant nor herself had any claim against Beebe or his representatives, and neither could have had any other possible motive for the purchase except to harrass the defendants, or to make money by the purchase of a lawsuit. The statute declares that no officer or other

person shall take upon him any business that is or may be in suit in any court to have a part of the thing in plea or demand; and no person upon any such agreement shall give up his right to another, and every such conveyance and agreement shall be void. (1 R. L. 172.) I am aware that this statute has been construed strictly; and that it does not extend to the fair and bona fide purchase of a chose in action in the ordinary course of trade or business, or for the purpose of securing or recovering payment of an antecedent debt. (2 Sim. & Stu. 244. 2 Freeman's Rep. 145. 6 Dane's Abr. 741, ch. 202, art. 9, § 3.) But if any state of facts can bring the purchase of a chose in action within the prohibition of the statute, this is a case of that description. The decree was no longer a personal claim against Post, or his property at large; but if it had any validity it was as against the lands then owned by the devisees of Mrs. Morris. It was strictly a purchase of the profits of a litigation; as to which the purchaser is not entitled to the aid of this court.

Independent of this objection to the complainant's right of recovery, there is another which is equally fatal in this case. It appears by the answer of the defendants, and by the proofs in the cause, that shortly after the conveyances to Mrs. Morris, Post was discharged under the insolvent act and assigned all his property to A. L. Degrove for the benefit of his creditors. If the conveyances to Mrs. Morris were fraudulent, the whole of this property of the insolvent passed by that assignment to the assignee under the act, whether inventoried or not; and the assignee is a necessary party to the suit.

I am satisfied the complainant is not entitled to any relief in this case, and the bill must be dismissed with costs.