## SUPREME COURT.

MARQUAT AND MARQUAT agt. MARQUAT AND WIFE.

The mere fact that the plaintiffs furnished to the defendants money to purchase land, does not give them an equitable lien on such land for the money so advanced. Such lien only exists as between vendor and vendee, or those representing them.

And where, as an inducement to the lending of such money, the defendants agreed to execute to the plaintiffs a mortgage on the lands purchased, *held*, that such promise was void by the statute of frauds. Such a contract being for the conveyance of an interest in lands, to be valid, must be in writing and subscribed by the party agreeing to execute the mortgage.

The advancing of the money by the plaintiffs in such case, is not such a part performance as will take the case out of the statute of frauds.

Where an action was commenced in such case against husband and wife, the title to the land purchased with the money lent having been taken in the name of the wife, and the only specific relief demanded in the complaint, was that the defendants execute to the plaintiffs a lien on such lands, by mortgage or otherwise, to secure the money so advanced, with a further demand for such other or further relief as the court might deem proper, and the defendants answered, denying, among other things, that the money was advanced on the credit of the said defendants, and alleging that it was advanced on the credit of a third person, which was denied in the reply, and on the trial it was established that the money was advanced on the credit of the defendants, and at their request, *held* (Justice PARKER dissenting), that the plaintiffs having failed to establish an equitable lien, were not entitled to recover against the husband the money so advanced, but that the complaint should be dismissed as to both defendants.

Justice PARKER, in dissenting, claimed that the case came within section 275 of the Code, and that the plaintiffs were entitled to recover judgment for the money so advanced, against the husband, who alone was legally capable of contracting, and that the plaintiffs ought not to be put to a second action to recover such judgment.

The practice applicable to such a case, before and since the adoption of the Code, reviewed and discussed.

*Albany General Term, Feb.* 1853—*before Justices* PARKER, WRIGHT and HARRIS. The plaintiffs state in their complaint, that about the 30th of April 1849, they lent to the defendants $300, to enable them to purchase certain real estate described in the complaint, upon an agreement that the defendants should secure the repayment of the loan by a lien upon the premises to

be purchased; that the purchase was made, and the title to the lands had become vested in the defendant Elizabeth. That though the whole amount of $300, with the interest thereon, is still due to the plaintiffs from the defendants, they refuse to secure the plaintiffs therefor. The relief demanded is that the defendants may be compelled to execute to the plaintiffs a lien upon the lands described, by mortgage or otherwise, to secure the loan with interest; or that the plaintiffs may have such other or further relief, as the court may deem proper in the premises.

The defendants in their answer, denied that they had agreed to secure the loan by a lien upon the land, or that the plaintiffs had made the loan upon any such promise; and denied also that the loan was made on the credit of the defendants, and set up that it was made to and for the benefit of one David Marquat. The plaintiffs in their reply reaffirmed that the loan was made to the defendants and not to said David Marquat.

The cause was tried without a jury, at the Ulster circuit, in December 1851, before Mr. Justice PARKER, who decided that the plaintiffs had no equitable lien on the premises, and were not entitled to enforce the execution of a mortgage by the defendants; but that the plaintiffs were entitled to a judgment against the defendant Peter Marquat, for the $300, and the interest thereon; and that as to the other defendant, the complaint should be dismissed without costs.

The following is an extract from the opinion delivered by Justice PARKER, at the circuit:

" This is not a case in which the plaintiffs have an equitable lien for the purchase money; such lien exists only as between vendor and vendee, or those representing them; such, for example, as the personal representatives of the vendor; or where a third person interested in a claim against the personal estate of the vendee, by way of marshalling assets, compels the vendor to enforce his lien on the land, instead of obtaining payment out of the personal assets of the vendee. Here the plaintiffs were not the vendors of the land to the defendants. The mere fact that they furnished the money to make the purchase, gives them no equitable lien (2 *Story Eq. Jur.* § 12, 27, *et seq. and cases there cited*).

Marquat and Marquat agt. Marquat and wife.

But it is shown that there was an agreement on the part of Peter Marquat to execute to the plaintiffs a mortgage on the lands. This agreement, if valid, would give the plaintiffs a remedy only against Peter Marquat, who could mortgage no more than his life interest in the premises. His wife being a *feme covert*, could make no contract to bind herself personally. But the agreement to execute a mortgage was void by the statute of frauds. It was an agreement to convey an interest in lands, that, to be valid, should have been in writing and not by parol (*2 R. S. 3d ed.* 194, § 6, 8).

If the title deeds of defendants had been actually deposited with the plaintiffs as security for the money advanced, it would be held to be an equitable mortgage and not within the operation of the statute of frauds (*2 Story Eq. Jur.* § 10, 20); but even that doctrine has been very much questioned (*17 Vesey,* 231; *2 Ves. & Bea.* 84; *17 Ves.* 371: *19 Ves.* 480); and the courts have uniformly said they can go no further; and where the deeds are delivered, not as a pledge but for the purpose of having a legal mortgage prepared, there would be no lien, and the case would be within the statute (*2 Story Eq. Jur.* § 10, 20; *9 Ves.* 115; *12 Ves.* 199; *2 Cox,* 247; *Turner,* 280; *6 Price,* 501; *3 Brown,* 401).

Advancing the money on the part of the plaintiffs, was not such a part performance as would take the case out of the statute (*2 Story Eq.* § 760). It only entitles the plaintiffs to recover it back—the agreement being void. Such relief only are the plaintiffs entitled to on the facts alleged and proved in this case.

The plaintiffs must have judgment against Peter Marquat for $300, and interest from 30th April 1849; and as to his wife, the complaint must be dismissed. But considering the part she has taken in the transaction, and what she is proven to have said in regard to it, she must not recover costs against the plaintiffs."

Judgment having been perfected upon the judgment thus rendered, the defendant, Peter Marquat, appealed to the general term.

JOHN VAN BUREN, *of Kingston, for Plaintiffs.*

J. O. LINDERMAN, *for Defendants.*

By the Court, HARRIS, Justice.—The complaint, so far as it states a cause of action at all, states matters of exclusive equitable

cognizance.    The plaintiffs allege that the defendants had agreed to execute a mortgage to secure a loan of money, and having refused to do so, they bring their action to compel them to perform their agreement.    There is some evidence to show that Peter Marquat did promise to execute such a mortgage, but there was no valid agreement to that effect.    The plaintiffs have therefore failed to sustain their action according to the allegations in their complaint, and, of course, they are not entitled to the specific relief demanded.    The question now is, whether they can, in this action, recover judgment against one of the defendants for the money loaned?

The 275th section of the Code authorizes the court in any case in which the defendant has answered, to grant any relief consistent with the case made by the complaint and embraced within the issue.    In other words, the judgment must be *secundum allegata et probata*.    It must be appropriate to the facts alleged and proved.    Here the case made by the complaint is that the defendants had agreed to secure the plaintiffs for their loan by a lien upon certain premises, and had unjustly refused to keep the agreement.    This is controverted by the defendants.    No other material isssue has been made.    Whether or not the plaintiffs, when they brought their action, were entitled to a repayment of their loan is not stated.    The recovery of the money due them is no part of the claim made in their complaint.    It is not embraced in the issue.

The defendants have successfully resisted the claim against them, as it is stated in the complaint.    The only material issue in the case is decided in their favor, and yet judgment is rendered against one of them for a cause of action, which if it had been set forth in connexion with that stated in the complaint, would have rendered the complaint demurrable.    The cause of action stated in the complaint is against both defendants, and that upon which the recovery has been had is against one only.    Nor does it meet this difficulty to say that the cause of action upon which the plaintiffs have been allowed to recover, is involved in the case stated in the complaint.    Suppose an action in the nature of replevin brought by the vendor of goods, on the ground that they have been fraudulently obtained, would it be pretended that

Marquat and Marquat agt. Marquat and wife.

if upon the allegation of fraud being controverted he should fail in sustaining his action, he could still recover for the price of the goods? Or, suppose he should bring his action against the vendee, alleging false representations, and fraudulent devices in making the purchase, as in Field agt. Morse (7 *How. Pr. R.* 12), would he be entitled to a judgment for his debt, though he failed upon the issues he had tendered by his complaint? The effect in such case would be, what it has been in this, that the successful party would be charged with the costs of the litigation. The party who has prevailed upon the whole issue has judgment rendered against him. Whatever else may be charged to the account of the *reformed practice*, it is not justly chargeable with such injustice. If the plaintiffs had brought their action against Peter Marquat alone, to recover their debt, it may be presumed that, if he justly owed them, he would not have defended the action. If he had defended it without success, he would have been justly chargeable with the costs of the litigation. The plaintiffs have, in fact, brought their action for a very different purpose. That action has been successfully defended, and yet the plaintiffs have recovered not only the amount of their loan with interest, but the costs of their unsuccessful litigation. Thus, though defeated, they have triumphed.

I admit that from the facts as they appear in the case, there is some reason to apprehend that the plaintiffs, after having assisted the defendants to secure the title to their property, are not likely to be well requited for their friendly aid. I would willingly, therefore, if it could be done upon any sound principles, relieve them from the payment of the costs of the action. But wholly misconceiving their remedy, they have brought their action upon a claim which they could not sustain. They have entirely failed upon the issue whichy the themselves chose to make, and they must share the fate of other unsuccessful litigants. I think the judgment should be reversed and that the complaint should be dismissed with costs.

WRIGHT, J., concurred.

PARKER, P. J., dissented, and delivered the following opinion: It was adjudged at the special term, that the plaintiffs had no equitable lien on the land purchased with the $300 advanced by

Marquat and Marquat agt. Marquat and wife.

them to the defendants, the title of which was taken in the name of the defendant Elizabeth. The reasons assigned were that a parol agreement to execute a mortgage is void by the statute of frauds; and that the wife, being a *feme covert*, could make no contract to bind herself personally. It was also held that, in general, an equitable lien exists only as between vendor and vendee, and does not extend to a person advancing money for the purchase of land.

So far, there is no difference of opinion as to the correctness of the decision; but it is supposed that the court below erred in giving judgment in favor of the plaintiffs against Peter Marquat, for the money so lent; and the important fact that such indebtedness was put in issue by the pleadings and proved upon the trial, seem to have been entirely overlooked by those who differ with me in opinion.

The question whether the complaint should have been dismissed because the plaintiffs failed to establish their equitable lien, which was the more important object of the action, or whether such other judgment as the party was justly entitled to, should have been rendered, is one of great practical importance, in administering justice under our present system.

It is certainly desirable, when all the facts and all the necessary parties are before the court, that justice should be administered on all the matters in controversy according to the established rights of the parties, whether they are legal or equitable. It was to effect that object, that legal and equitable powers were vested in the same tribunal, to be exercised at the same time, and under the same forms and rules of proceeding. With that object in view, more prominently than any other, was our present system of practice devised. But if, after all, a party is to be denied what is called legal relief because he specifically asked equitable relief, in a case where the pleadings, as in this case, allege the indebtedness, and where the proof clearly establishes it; and if, under such circumstances, a party is to be turned out of court and put to a second action, we have not yet made one step of progress in effecting the desired reform. A party might as well, under the late system, be turned out of one court and sent to another for relief, as under the present system to be turned out

of court, only that he might enter the same tribunal again in quest of justice. In either case, the party entitled to relief is equally subjected to the expense and delay of two actions instead of one; the very evil that it has been intended, by our recent constitutional and legislative enactments, to obviate.

In my judgment, a careful examination of the provisions of the Code, and a reasonable and proper application of them, will show that the efforts to effect this most desirable reform have not failed of their object.

The Code provides (§ 275) that the relief granted to the plaintiff, if there be no answer, can not exceed that which he shall have demanded in the complaint. This was wisely provided to protect a defendant who, on examining the complaint and ascertaining the precise extent of the relief claimed, preferred to admit its justice, by suffering judgment to be taken against him by default. But this is the only case in which the demand for relief made in the complaint has any influence whatever on the relief adjudged. For the same section proceeds to enact that "in any other case, the court may grant him (the plaintiff) *any* relief consistent with the case made by the complaint and embraced within the issue." In all actions, therefore, which are defended, it is of no consequence what is the demand for relief in the complaint, or whether there is any demand for specific relief. Whether the plaintiff has mistaken the kind of relief to which he is entitled, is entirely immaterial. "Any relief may be given, consistent with the case made by the complaint and embraced within the issue." More comprehensive language could not have been employed, and it will hardly answer to say that "any relief" does not include both legal and equitable, as they are usually called. I think the case of Cahoon and others agt. The Bank of Utica, decided by the Court of Appeals since the argument of this cause (*ante page* 401), establishes the doctrine that a plaintiff may have both legal and equitable relief in the same action. Brown & Rossiter, copartners, were indebted to the Bank of Utica to the amount of $3000, for which the bank held their partnership notes. Brown assigned to the bank a mortgage, his private property, as security for the payment of the notes. The Bank collected the full amount of the mort-

gage, which paid the notes, leaving a surplus in money in possession of the bank. The plaintiffs, general assignees of Brown, filed their complaint against the bank, demanding the excess of money and a return of the notes. The defendant demurred on the ground that the plaintiffs could not have judgment for the excess in money and a return of the notes in one action, but it was held that the complaint was good.

The case before us, being one in which the defendants answered, is to be decided under the last clause of the section of the Code above quoted, and the plaintiffs are clearly entitled to legal instead of equitable relief, if such relief is consistent with the case made by the complaint and embraced within the issue. Let us see if such is the case. The legal relief is a judgment for money lent. Is it consistent with the case made by the complaint? Clearly so, because the complaint alleges the lending of $300 to the defendants. This indebtedness is the foundation of the claim. It is that sum of money which the plaintiffs are seeking to secure. They allege a lending on request; the law implies a promise to repay. It is true they aver more, viz., a promise to secure by mortgage; but the law adjudges that promise void. It is no objection that the plaintiffs allege too much. They must have judgment according to the allegations sustained.

Is it embraced within the issue? It seems to me this is equally clear. The plaintiffs allege the lending of $300 to the defendants. The defendants in their answer deny that the money was advanced to them, but say it was advanced by plaintiffs to and for the benefit of one David Marquat, a third person. The plaintiffs in their reply deny that the money was advanced for the benefit of David Marquat, and reassert the loaning to the defendants. The indebtedness of the defendants was, therfeore, directly in issue.

This indebtedness thus put in issue, was established by the evidence; and I can see no possible reason why the plaintiffs are not entitled to judgment upon it. Not against the wife, who was legally incompetent to contract, but against the husband, who alone was liable.

I have thus far examined this case without reference to the demand for relief actually made in the complaint, and have shown,

I think, conclusively, that the plaintiffs would be entitled to judgment for the money, though the demand for relief had been only for a specific performance of the agreement to mortgage. But the demand for relief was as follows: "Therefore these plaintiffs demand the judgment of this court, that the said defendants execute to these plaintiffs a lien upon the aforesaid lands · by mortgage *or otherwise*, to secure the said sum of three hundred dollars and interest from the 30th day of April 1849; *and for such other or further relief* as the court may deem proper in the premises, &c." It appears, therefore, that the plaintiffs asked a lien "otherwise" than by mortgage, and sought, generally, "other or further relief." Even under the late chancery practice, with such a prayer for relief, the plaintiff would have been entitled to any relief consistent with the case made by the bill and the prayer for specific relief, though different from the specific relief prayed for (Colton vs. Ross, 2 *Paige*, 296); and though a prayer for specific relief was usually inserted for greater caution, and as a matter of convenience, it was not absolutely essential to the validity of the bill; as under the prayer for general relief, the complainant might claim at the hearing, particular relief (2 *Barb. Ch. Pr.* 37). When it was doubtful what relief the plaintiff might be entitled to, the bill could be framed with a double aspect with an alternative prayer for relief (2 *Paige*, 396), and where a bill was filed for a specific performance, if it appeared the party had put it out of his power to perform specifically, the bill was retained and an equivalent in damages awarded (Woodcock vs. Bennett, 1 *Cow.* 711). Nor was a defendant permitted to set up at the hearing that the plaintiff had a remedy at law, unless he had demurred or taken the objection in his answer (Underhill vs. Van Cortlandt, 2 *John. Ch. R.* 369). Where a court of equity obtained jurisdiction of a cause for one purpose, it might retain it generally (Rathbone vs. Warren, 10 *John. R.* 587).

I have thus referred to the practice of the late court of chancery to show that even there it was attempted in similar cases, as far as the jurisdiction of the court would permit, to administer justice to the parties when once before them; and it was only for want of jurisdiction that a bill was dismissed and the party

sent to a court of law for relief. That want of jurisdiction no longer exists; and I can not consent to a construction of the Code which will make the present practice less liberal than that which preceded it. If such is the result of our efforts to improve, that we have become more technical than ever in administering justice, that the substance is accounted of less importance than the shadow, and that indisputable legal rights are still to be measured by set phrases and rigid forms, then indeed, we have signally failed in effecting a reform, and the word is a mere mockery—*lucus a non lucendo.*

I can not agree to the conclusion that the defendants have successfully resisted the claim against them. On the contrary, though they succeed on the legal question in escaping from the agreement, which it is proved they both made, to execute a mortgage as security for the loan, they have failed entirely in the defence they set up, that the loan was made to a third person and not to them. And the indebtedness thus denied and established was the most material fact in issue, and was the foundation of the plaintiffs' claim.

It is said that the complaint would have been demurrable, if it had contained a demand for judgment upon the indebtedness against Peter Marquat alone, in case cf a failure to compel both defendants to execute the mortgage. I can not agree to such a proposition. The only grounds of demurrer to a complaint are the six stated in section 144 of the Code, and none are applicable to such a case. The complaint would then, as now, present but one cause of action, leaving the nature of the relief to depend upon the proofs and the judgment of the court.

Nor is there any difficulty in .giving judgment against Peter Marquat alone, where it is alleged and proved that the promise was made by him and his wife, and the action is brought against both. As she was under a personal disability, which rendered her incapable of making a valid promise, judgment may be given against the other defendant who was competent to contract. The Code (§ 274) authorizes judgment to be given for or against one or more of several plaintiffs and for or against one or more of several defendants. I do not go so far as two of my brethren did in The Mechanics' and Farmers' Bank vs. Rider

Marquat and Marquat agt. Marquat and wife.

(5 *How. Pr. R.* 501), who held that in all cases a joint contract may now be severed by giving a judgment in favor of one plaintiff or defendant and against the other. But I hold, as I did in that case, and as has been since adjudged in Fullerton vs. Taylor (6 *How. Pr. R.* 259), that the object of that section of the Code was to enable the court to give judgment in all cases according to the contract, as it should turn out to be on the trial, regardless of the number of parties named on the record; and that, in no case can a joint contract be severed in giving a judgment, except where, as in this case, there was some personal disability or personal defence, such as discharge in bankruptcy, infancy, &c. If three persons are sued as partners, and it appears on the trial that the indebted firm is composed of but two of the defendants, judgment may now, under the Code, be rendered against the two and in favor of the other defendant. It was the object of the section in question to obviate the necessity which existed under our late practice, of giving judgment in such cases in favor of all the defendants, and putting the plaintiff to a new suit against the two partners only. In this case, both defendants are alleged to be indebted; but as one of them is a *feme covert*, against whom the plaintiffs can not have judgment in consequence of her legal disability, although she had the whole benefit of the money loaned, by buying land with it in her own name, the plaintiffs are entitled to judgment against the husband alone. In law, he alone made the promise.

This is not at all like the case to which it was likened by counsel, of an action in the nature of replevin brought by the vendor of goods, on the ground that they had been fraudulently obtained, and upon failing to establish the fraud claiming to recover the price of the goods. There the two claims would be inconsistent; one would affirm and the other would disaffirm the contract. Here both claims are in affirmance of the contract. If the plaintiffs fail in their claim to compel the executing of the mortgage, it is entirely consistent in them to claim judgment for the amount of the loan. In both cases the loan is affirmed, the contract is insisted upon, and the object is security for the debt. It is no objection to the plaintiffs recovery that they have not succeeded in all they claimed. If they had claimed to recover

the value of several articles of property sold, worth in the aggregate one thousand dollars, and on the trial had succeeded in proving only a single article delivered, worth but one hundred dollars, it will not be pretended that the plaintiffs would not be entitled to judgment for the one hundred dollars, though the defendants had succeeded as to nine-tenths of the matters in controversy. The same principle applies to the case before us. In the case I have supposed, the action being to recover money only, the plaintiffs would recover costs; but in the case we are deciding, costs are in the discretion of the court (*Code*, § 306); and it certainly is a question whether the plaintiffs, having failed in one leading object of the action, ought to recover costs. But the fact that they have so failed is no reason why they should not have judgment for what they have succeeded in establishing.

It was said upon the argument, that in a separate action to be brought to recover the money lent, the defendant might allege a set off, or set up some other defence. The obvious and conclusive answer to that argument is that he might set up any such defence in this action. As the indebtedness was the foundation of the action, so any defence to such indebtedness was a full defence to the action. If the defendant could set up usury, or payment, or establish a set off, or in any way defeat the claim of indebtedness, the plaintiffs could have no right to either a mortgage or a judgment. And this the defendants perfectly well understood when they denied the indebtedness and answered that the credit was given to David Marquat and not to them. Having defended on that ground and having failed in that defence, they ought not to have an opportunity to litigate the question of indebtedness again; nor is it pretended, in fact, that any other defence exists beyond the question already litigated.

The whole case grows out of a single transaction. The facts not admitted in the pleadings have been established by proof. Both claims to relief are in affirmance of the contract. All the parties interested are before the court, and I think such judgment ought to be given as the plaintiffs are entitled to, without subjecting them to the expense and delay of a second action.

I have examined this case at considerable length, with a view to bring the questions involved before my brethren on the bench

Marquat and Marquat agt. Marquat and wife.

for their consideration.   Upon the spirit with which the judges second the efforts of the legislature to effect a much desired reform, must depend, in a great measure, its success.   Judicial construction may do much toward sustaining or defeating a new, and, in some respects, necessarily crude system of procedure. With the aid and cooperation of the judiciary, and with such legislative amendments as experience may suggest, we may reasonably hope, in due time, to enjoy the benefits of a system of practice, under which justice may be administered in the simplest form, and with the least possible expense and delay.   This can never be accomplished until the forms of pleading and proceeding are the same, whether the relief sought be legal or equitable. Nor can it be accomplished, until the court has the power and shall be required, in all cases, to render final judgment upon all the material facts in controversy, which are covered by the issues and established by proof; giving to the party either legal or equitable relief, or both, whenever all the parties to be affected by the judgment are before the court.

If this can not now be done, then further legislation is imperatively demanded.   But believing that the powers of this court are now ample for such purpose, I think the judgment rendered at special term should be affirmed.