## WILLIAM F. SAYLES, Administrator, & others, *v.* WILLIAM W. TIBBITTS, Administrator, & others.

A court of equity will not, any more than a court of law, enforce a contract which it sees to be tainted with the crime of maintenance; but it is not maintenance in a creditor to purchase, *bonâ fide*, a chose in action, for the purpose of securing or recovering payment of an antecedent debt, especially if he be already beneficially interested in the claim purchased; nor is an assignment to one of the *cestuis*, of a balance, due from a trustee who has neglected to account, a purchase by a stranger, of a claim for the damages of an ordinary tort.

Where a bill states the plaintiff to have been a creditor, entitled under a general assignment, in trust for the benefit of the assignor's creditors, and then sets forth a special assignment to the plaintiff by the trustees of a balance due from the defendants' intestate to the assigned estate, and prays relief in the character of such special assignee, the bill will not be construed as claiming relief upon two distinct grounds; but his position as a creditor under the assignment will be regarded as having been stated to avoid the charge of maintenance in taking the special assignment, the prayer for relief being the test of the ground upon which the plaintiff seeks the aid of the court.

The assignors of an equitable chose are not necessary parties to a bill by the assignee, seeking an account due to him by virtue of the assignment; and if their joinder, as parties, be any objection at all, the misjoinder of the one, as plaintiff, or of the other, as defendant, inasmuch as it does not materially affect the decree, can only be taken advantage of by demurrer, and in case of a *defendant* misjoined, only by himself.

A dismissal of a bill, generally, upon the motion of the plaintiff, before replication filed, and before hearing, upon the ground of a defect of parties, and a defect in the conveyance under which he claims title to relief, is no bar to a new bill for the same cause, although the court may have refused to dismiss the bill *without prejudice;* a dismissal

of a bill, after hearing upon the merits, being, according to the general practice, alone pleadable in bar.

A bill, founded upon an assignment, executed by only one of two persons whose concurrence therein is necessary to vest in the plaintiff a title to the relief prayed by him, is not a bill for the same cause, with one which sets forth a title to the same relief, founded upon an assignment executed by both the necessary assignees.

Where an accommodation indorser of a firm, in failing circumstances, received a mortgage, with power of sale, of certain of their property, to secure him as such indorser, and a day or two afterwards accepted, with others, as trustee, an assignment by the firm of all their property, including that mortgaged to him, for the benefit of their creditors, and two years afterwards, sold the mortgaged property under his power, but rendered or exhibited to his co-assignees no account of the proceeds of sale, or of his application of the same; *Held*, upon a bill, filed for an account of the balance of such proceeds against his administrator, by one entitled thereto under an assignment of such balance executed by his surviving co-assignees, that, as the mortgagee and trustee was a purely equitable trustee of such balance by virtue of an express trust, the statute of limitations did not run against his accountability; *Held*, also, that the delay of his co-assignees, or of the body of creditors entitled under the assignment to call him to an account, unless very long, would not avail him, or his representative, under such circumstances, as an equitable bar, upon the ground of *laches;* and that the presumption that he had accounted, arising from the lapse of time, was rebutted by the facts, that, within a year after his sale of the mortgaged property, the *controlling* co-assignee died, and another co-assignee removed to the West, and ceased to act in the trust, and that he never communicated upon the subject of his account, as mortgagee, with the other co-assignee, who had no knowledge with regard to it.

BILL IN EQUITY. The material facts of this case are, that in the summer of 1829, Abraham and Isaac Wilkinson, a manufacturing firm of North Providence, being insolvent, on the 12th day of June of that year, conveyed to William Wilkinson, the defendants' intestate, seven shares in the Anawan Manufactory, and eight shares in the Fall River Iron Works at Troy, Massachusetts, in mortgage, to secure him for past and future accommodation indorsements, and past and future responsibilities made or incurred by him for Abraham and Isaac Wilkinson, or for either of them, or for the Valley Falls Co., or for the Albion Co., of which they were members, said mortgage being accompanied with a power of sale; and on the 14th day of June, 1829, that is, on the next day, mortgaged to him, with like power, the Cove Factory, or Mills, situated in Seekonk, Massachusetts, to secure him for past accommodation indorsements made, and responsibilities by him incurred for them or either of them, or for either of the said last-named companies. On the 15th day of June, 1829, that is, the next day after the date of the last mortgage, Abraham and Isaac Wilkinson made a gen-

eral assignment in trust for the benefit of their creditors, to said William Wilkinson, and to Nathaniel Searle, of Providence, and to Benjamin Fessenden, and Hiram M. Barney, of North Providence, wherein, with other property, they expressly mention as conveyed, the property above mortgaged to William Wilkinson, subject to those mortgages. The trusts created by this assignment were expressly assumed by William Wilkinson, as well as by the other assignees named in it. On the 6th of April, 1831, William Wilkinson, under the power contained in the first of the above mortgages, sold and conveyed the shares in the Anawan Manufactory, and in the Fall River Iron Works, mortgaged to him as aforesaid, and received therefor in cash the sum of $37,000; and on the 9th day of July, 1831, sold and conveyed the Cove Factory property, mortgaged as above to him, under a like power contained in the second of the aforesaid mortgages, and received therefor in cash the sum of $10,500; making in all the sum of $47,500, received by him, by virtue of said mortgages, to be applied to his relief as indorser, &c., as aforesaid. It appeared also, that in great part, prior to said sales, he had paid paper indorsed by him for the accommodation of said A. & I. Wilkinson, and of the other companies of which they were members, amounting to about $40,000; and after that time, and as late as the year 1838, made, so far as could be ascertained from his books and papers, payments of other claims against said A. & I. Wilkinson, deemed by him to be within the protection of his said mortgages. Up to the time of his death, which took place in May, 1852, he being then in the 92d year of his age, no account, as mortgagee, appeared to have been rendered by him to his co-assignees, and no claim to have been made by them, nor by any creditor of A. & I. Wilkinson, of him as such mortgagee. It was proved, that Hiram M. Barney, one of the assignees, removed from this state to the West sometime in 1832, and after that time ceased to act as an assignee; that Nathaniel Searle, another, and the controlling assignee during his life, died in February, 1832; after which, the business of the trust devolved wholly upon the said William Wilkinson and Benjamin Fessenden, the remaining assignees. It also appeared that Fessenden, though he had heard that A. & I. Wilkinson had conveyed

portions of their property, including the Fall River property, to William Wilkinson, to secure him as indorser, had no knowledge, during the lifetime of William Wilkinson, of the amount of his liabilities as such indorser, or of the amount received by him as proceeds of the mortgaged property, or of the appropriation by him of such proceeds, nor of any balance in his hands due to the assignees ; and that no communication had been made to him, by William Wilkinson, upon either of those subjects. It further appeared, that Isaac Wilkinson died on the 2d day of March, 1843, and that Abraham Wilkinson died on the 15th day of April, 1849, having always resided in this state.

It further appeared, that George Wilkinson, the intestate of the plaintiff Sayles, claiming to be a creditor of A. & I. Wilkinson to upwards the amount of $28,000, on the 3d day of August, 1852, in consideration of $500 by him paid therefor, procured from Benjamin Fessenden an assignment to himself, amongst other things, of all claim which the assignees of A. & I. Wilkinson might have against the administrators of William Wilkinson for any surplus remaining in the hands of said William as mortgagee as aforesaid, and on the 6th day of October, 1852, filed his bill in the supreme court for the county of Providence against William W. Wilkinson and William W. Tibbitts, administrators of said William Wilkinson, for an account of such surplus ; alleging in said bill, that Hiram M. Barney had never accepted his trust as assignee, or acted thereon, and that Searle and William Wilkinson having died, the said Fessenden was sole remaining assignee of A. & I. Wilkinson ; that an answer was filed to said bill on the 14th day of February, 1853, and before filing a replication, the plaintiff, on the 30th of April, 1853, moved that his said bill be dismissed without prejudice, " for want," as alleged in said motion, " of Hiram M. Barney, as a party plaintiff ; the complainant supposing, when his bill was filed, and the conveyance was executed by Fessenden to the complainant, that said Barney had deceased, but now finds he has not ; " that said court refused to dismiss said bill " without prejudice," unless upon payment of the respondent's counsel fees, as well as costs ; whereupon, the complainant refusing to pay such counsel fees, his bill was, on the 43d day of the March

term of said court, 1853, dismissed absolutely, with costs; that said George Wilkinson, having on the 28th day of March, 1853, procured a further assignment, amongst other things, of said surplus, to be executed to him as well by said Hiram M. Barney as by said Fessenden, on the 10th day of June, 1853, filed a bill for an account of such surplus, against the said administrators of said William Wilkinson and Benjamin Fessenden, in the circuit court of the United States for the District of Rhode Island, wherein was joined with him, as plaintiff, the said Hiram M. Barney, alleged therein to be a citizen of the state of Illinois; that said bill was proceeded with to a hearing, when, at the June term of said court, 1856, the same was dismissed for want of jurisdiction. (See *Wilkinson et al.* v. *Wilkinson et al.* 2 Curtis, C. C. R. 582.)

George Wilkinson having in the mean time died, and the complainant, Sayles, having been appointed administrator of his estate in Rhode Island, on the 28th day of August, 1856, this bill was filed by said Sayles, as administrator, in his own name, and in that of Hiram M. Barney, one of the assignees of A. & I. Wilkinson, against William W. Tibbitts, administrator on the estate of William Wilkinson, and Benjamin Fessenden, the other surviving assignee of said A. & I. Wilkinson, for an account of any surplus remaining in the hands of William Wilkinson out of the proceeds of sale of said mortgaged property, after all due allowances to him for his indemnity as indorser as aforesaid, and for his disbursements as attorney to sell, under the power contained in his said mortgages.

The bill being brought to issue, was heard upon the answers, exhibits, and proofs; *Benjamin Cozzens*, arguing for the complainants, and *William H. Potter*, for the respondents.

*Cozzens*, for the complainants, submitted the following points and authorities.

*First.* That the fund, of which an account is sought in this suit, was held by the defendants' intestate, under a direct, express, and continuing trust, for the breach of which no action at law could be brought, and of which a court of equity has exclusive jurisdiction. Consequently, neither the statute of limitations, nor the lapse of time, is a bar to the suit. *Hovenden* v.

*Annesley*, 2 Sch. & Lef. 633; *Beckford* v. *Wade*, 17 Ves. 97; *Chalmer* v. *Bradley*, 1 Jac. & W. 1; *Cholmondeley* v. *Clinton*, 2 Ib. 1; *Attorney-General* v. *Fishmonger's Co.* 5 M. & Cr. 25 Cond. Ch. R. 16; *Wedderburne* v. *Wedderburne*, 4 Ib. 18 Cond. Ch. R. 41; *Portlock* v. *Gardner*, 1 Hare, 594; *Attorney-General* v. *Brewer's Co.* 1 Meriv. 498; *Decouche* v. *Savetier*, 3 Johns. Ch. 190, 216; *Goodrich* v. *Pendleton*, Ib. 389; *Kane* v. *Bloodgood*, 7 Ib. 190; *Murray* v. *Coster*, 20 Johns. 576, 583–585; *Johnson* v. *Humphreys*, 14 S. & R. 394; *Walker* v. *Walker*, 16 Ib. 379, 384; *Lyon* v. *Marclay*, 1 Watts, 271, 275; *Allen* v. *Woolley*, 1 Greene, Ch. 209–213; *Farnum* v. *Brooks*, 9 Pick. 243; *Boone* v. *Chiles*, 10 Pet. 180, 223; *Oliver et al.* v. *Piatt*, 3 How. 333, 411; *Robinson* v. *Hook*, 4 Mason, 151, 152; *Smith* v. *Calloway*, 7 Blackf. 86; *Murdock* v. *Hughes*, 7 S. & M. 219, 233; *Fisher* v. *Fisher*, 1 McCord, 176. Angell on Limitations, p. 161, § 132, and note; second edition, p. 164, § 3; p. 171, § 9; Ib. p. 174, § 13; p. 505, § 1; Ib. last edition, p. 166, and 368; Hill on Trustees, 2d American edition, 264, note, *et seq.*

*Second.* The doctrine of the first point is strengthened in cases of fraud or concealment. *Hovenden* v. *Annesley*, 2 Sch. & Lef. 663; *Pickering* v. *Stamford*, 4 Bro. C. C. 214; *Provost* v. *Gratz*, 6 Wheat. 481; *Baker* v. *Whiting*, 3 Sumn. 476, 486; *Calcote* v. *Stanton & Bucknor*, 3 Am. Law Reg. 50; Adams, Equity, 176.

*Third.* That laches is not to be imputed to a body of creditors. 2 Sugden on Vend. p. 900, § 49; *Whitecote* v. *Lawrence*, 3 Ves. 740, 748, 752; *Lister* v. *Lister*, 6 Ib. 632; *York Buildings Co.* v. *McKenzie*, 8 Bro. Par. Ca., by Tomlin, 42; Hill on Trustees, 2d American edition, p. 242.

*Fourth.* That after the defendant's intestate accepted the assignment, he was bound to apply the balance of the fund he derived from the mortgages, after reimbursing himself for the principal and interest of his indorsements, to the uses of the assignment, and could not use it for the benefit of the assignors. Burrill on Assignments, 184, 444; *McDaniel et al.* v. *Colvin et al.* 16 Verm. 300; *Shirras* v. *Craig*, 7 Cranch, 35; *Bank of Utica* v. *Finch*, 3 Barb. Ch. 293; *Craig* v. *Tappan*, 2 Sandf. Ch.

78; *James* v. *John,* 6 Johns. Ch. 429; *Kramer* v. *F. & M. Bank,* 15 Ohio, 255; *Spader* v. *Lawler,* 17 Ib. 371.

*Fifth.* That the assignment of A. & I. Wilkinson had the effect to constitute the assignees trustees of the plaintiff's intestate for his claim under it; and that such claim is not barred by the statute of limitations, or by lapse of time; and whether he could enforce his claim against the assignors, after the statute attached, or there ever were any legal representatives of them, is wholly immaterial. See *Ex parte* Ross, *in re* Coles, 2 Glyn & Jam. 46; Same case, on appeal, Ib. 330; *Minot* v. *Thatcher,* 7 Met. 348; *Willard* v. *Clark,* Ib. 438.

*Sixth.* Although the claim of the plaintiff's intestate, under the assignment, is stated in the bill as an equity in the case, no decree is sought on the ground of it; and if it had been, it would not constitute a misjoinder, or multifariousness. Story, Eq. Pl. 279, 284, and Ib. *b.* 283; 1 Dan. Ch. Pract. 384, 385, 390; *Blease* v. *Burgh,* 2 Beav. 221; S. C. 17 Cond. Ch. 222.

*Seventh.* That the commencement of neither of the former bills, under the circumstances in which they were terminated, constitutes any bar to the present suit; and if it did, the matter must be pleaded. Story, Eq. Pl. 456, 541, 791, 793, and cases cited; Mitf. 239, 240, 739; 2 Dan. Ch. Pract. 929, 930, and cases cited; Ib. 753, 754, and cases cited; Ib. 1200; *Stafford* v. *City of London,* 1 P. Wms. 428; *Jenkins* v. *Eldridge,* 3 Story, R. 300, 319; *Pickett* v. *Loggan,* 14 Ves. 232; Cooper, Eq. Pl. 270; *Peirce* v. *Dunn,* 4 Johns. Ch. 142; *Neafe* v. *Neafe,* 7 Ib. 1; *Saunders* v. *Frost,* 5 Pick. 275. That this matter should have been pleaded, see 2 Dan. Ch. Pract. 692, 721–725, 797; 2 Story, Eq. Pl. 697, 735–744.

*Potter,* for the respondents, submitted the following points and authorities:—

*First.* That the entry and dismissal of the former bill in this court is a bar to this bill. 1 Dan. Ch. Pract. 953, 1200; *Foot et al.* v. *Gibbs et al.* 1 Gray, 412; *Bigelow et al.* v. *Winsor,* 1 Ib. 301, 301, and cases cited.

*Second.* That Fessenden should have been joined with Barney and Sayles, as plaintiff, and not made a defendant.

*Third.* That the bill is multifarious, in joining separate and

distinct subjects of claim, to wit, that of Barney, as assignee of
A. & I. Wilkinson, and that of Sayles as administrator of
George Wilkinson, a creditor of A. & I. Wilkinson, and also
an assignee of the trustees of A. & I. Wilkinson,.which claims
are antagonistical. Story, Eq. Pl. §§ 284, 286, 537, and note;
*Campbell* v. *McKay,* 1 Myl. & Cr. 624, 625; *Hudson* v. *Madison,*
12 Sim. 416, 418.

*Fourth.* That the assignment to George Wilkinson by the
assignees of A. & I. Wilkinson is void, as against public policy,
being of a mere tort or wrong. 2 White & Tudor's Lead.
Cases in Eq. 592; *Prosser* v. *Edmunds,* 1 Y. & Coll. Exch.
Cases, 481; *Gardner* v. *Adams,* 12 Wend. 297; 18 Barb. 500.

*Fifth.* That George Wilkinson is in no just and legal sense
a creditor of A. & I. Wilkinson; his debt having been out-
lawed in the lifetime of both A. & I. Wilkinson, and being
more than twenty years old, is presumed to be paid. 7 Johns.
R. 556; 10 Ib. 381; 9 N. H. 398; 9 Watts, 441; *Denniston*
v. *McKeen,* 2 McLean, 253.

*Sixth.* That the claim of George Wilkinson, in any form and
against any party, is stale, and for that reason is barred in a
court of equity. Story, Eq. Pl. §§ 503, 756, 757, 759, 760, 813,
814; Angell on Lim. §§ 171, 172, 173; *Blewit* v. *Thomas,*
2 Ves. Jr. 669, 671; *Bertine* v. *Varian,* 1 Edw. Ch. 343; *Ellison*
v. *Moffit,* 1 Johns. Ch. R. 46; *Chalmers* v. *Bradley,* 1 Jac. & W.
53; *Ray* v. *Bogart,* 2 Johns. Cas. 432; *Kane* v. *Bloodgood,*
7 Johns. Ch. R. 90; *Bolling* v. *Bolling,* 5 Munf. 334; 4 Watts
& Serg. 557; *Fisher* v. *Boody,* 1 Curtis, C. C. R. 206; 2 Wash.
C. C. R. 262; *Gould* v. *Gould,* 3 Story, R. 516; *Mitchell* v.
*Williams,* 1 McLean, 96; *Piatt* v. *Vattier,* Ib. 160–165; S. C.
9 Pet. 405; *Scott* v. *Crans,* Ib. 486; *Elmendorf* v. *Taylor,* 10
Wheat. 152; *McKnight* v. *Taylor,* 1 How. 167; *Portlock* v.
*Gardner,* 1 Hare, 603, 607; *Cholmondeley* v. *Clinton,* 2 Mer. 93;
S. C. 2 Jac. & Walk. 1; *Hovenden* v. *Ld. Annesley,* 2 Sch. &
Lef. 607.

*Seventh.* The claim is barred by the statute of limitations,
not being a claim under an *express, direct,* and technical trust.
Angell on Lim. §§ 166, 168, 174–178, 473, 474; *Trecothick* v.
*Austin,* 4 Mason, 16; *Lyon* v. *Marclay,* 1 Watts, 271; *Tinney*

v. *Cochran*, 1 Watts & Serg. 112; *Wisner* v. *Barrett*, 4 Wash. C. C. R. 631; 3 Johns. Ch. R. 190; 16 S. & R. 170; *Hanley* v. *Cranmer*, 4 Cowen, 717. The claim is a mere money trust against which the statute runs. *Maury* v. *Mason*, 8 Porter, 211; *Willison* v. *Watkins*, 3 Pet. 43; *Bowman's Devisees* v. *Walker et al.* 2 McLean, 376, 398, 399; *Hughes* v. *Edwards*, 9 Wheat. 489; *Stafford* v. *Richardson*, 15 Wend. 302; *Buchan* v. *James*, 1 Speere, Ch. (S. C.) 375, 382; *White* v. *White*, 1 Johns. (Md.) Ch. Dec. 53; *Green* v. *John*, 3 Gill & J. 389; *Elmendorf* v. *Taylor*, 10 Wheat. 489; and the tendency of modern decisions has been to narrow the exception and to lessen the cases excepted from the statute. Angell on Lim. § 455.

*Eighth.* That the complainant, seeking to avoid the bar of the statute by charging fraudulent concealment on the part of William Wilkinson, must *prove* it, which he has not done, and prove it clearly. *Farrar* v. *Brooks*, 9 Pick. 213; *McKoun* v. *Whitmore*, 31 Maine, 448; *Cole* v. *McGlathny*, 9 Greenl. 131, and note; *Carr* v. *Hilton*, 1 Curtis, C. C. R. 392, 393. What is notice of fraud. *Carr* v. *Hilton, sup.* and cases cited; *Owen* v. *Homer*, 25 Eng. L. & Eq. R. 11. Even in cases of fraud, a court of equity will never entertain a bill for relief, if the plaintiff has been guilty of gross laches. *Fisher* v. *Boody*, 1 Curtis, C. C. R. 218, 219; *Carr* v. *Hilton*, Ib. 390–393; *Stearns* v. *Paige*, 7 How. 829; *Gould* v. *Gould*, 3 Story, R. 516, 536–540.

*Ninth.* The statute of limitations bars this claim, because an action of account could have been maintained by Fessenden and Barney, against Wilkinson, upon it. 1 Bac. Ab. tit. Account A.; *Griffith* v. *Willing*, 3 Binney, 317; *Hale* v. *Hale*, 3 Day, 377; *James* v. *Brown*, 1 Dallas, 340; *Adams* v. *Corbin*, 3 Verm. 372; *Fowle* v. *Kirkland*, 18 Pick. 299; *Matlock* v. *Lyman*, 16 Verm. 113; *Bertine* v. *Varian*, 1 Edw. Ch. R. 385; Stats. of R. I. Dig. 1822, pp. 193, 194, 220; Stats. of R. I. Dig. 1844, pp. 180, 181, 234, 244.

*Tenth.* After so long a lapse of time, the clear presumption is, that the account of William Wilkinson, as mortgagee, was settled between him and his co-assignees, it being the duty of the latter to recover any balance which might be due from him, as mortgagee. *Clark* v. *Hopkins*, 7 Johns. 556; 10 Ib. 381;

2 McLean, 253; *McKnight* v. *Taylor*, 1 How. 168; Angell on Lim. §§ 172, 173, 813, 814; 4 Watts & Serg. 557; *Gover* v. *Hall*, 3 Har. & Johns. 43; 1 Hill, Ch. R. 376; 1 Cheves, 57, Part 2d; 2 Hill, Ch. R. 228; *Ray* v. *Bogart*, 2 Johns. Cas. 432; 2 Call, 537; 2 Edw. Ch. R. 1; 10 Pick. 112; 10 Pet. 177; 2 Ves. 583; 16 Johns. 214; 1 Greenl. Ev. §§ 16, 17, 38, 39, and note 3; 2 Ib. § 528; 7 Serg. & Rawle, 410; 14 Ib. 15; Matthews on Presump. Ev. 356, 358–362, 377, 378, 425–428, 439, 442; 4 Selden, R. 374; 5 Ib. 398; 2 N. H. 313; 2 Blackf. 421; 2 Munf. 534; 3 Call, 329; *Wistanley* v. *Savage*, 2 McCord, 439; 2 Hill, Ch. R. 233; 1 Y. & Coll. 1; 1 Gill, 425; 1 Maryl. Ch. Dec. 53; 7 Gill, 70; 6 Foster, 128; 33 Maine, 446; 14 Missou. 437; 4 Rich. Eq. R. 16; 2 Maryl. Ch. Dec. 128, 231, 474; 8 How. 586; 2 Strobh. Eq. R. 27; 3 Sumn. 170; 5 How. (Mis.) R. 606; 12 N. H. 328; *Denniston* v. *McKeen*, 2 McLean, 253.

AMES, C. J. This bill is, in substance, brought by the administrator of the estate of the late George Wilkinson, against the administrator of the estate of the late William Wilkinson, for an account of the proceeds of sale of certain property, sold by William Wilkinson in his lifetime, as mortgagee, under powers of sale contained in two mortgages, executed to him, about the middle of June, 1829, by Abraham and Isaac Wilkinson, for his indemnity as their accommodation indorser; he being also, at the time of the sale, one of said Abraham and Isaac's assignees, under their general voluntary assignment for the benefit of their creditors. The plaintiff's claim to this account, as stated in his bill, is founded upon a transfer of the surplus proceeds of the mortgaged property, executed on the 28th day of March, 1853, to *his* intestate, for the consideration of five hundred dollars, by the surviving assignees of Abraham and Isaac Wilkinson under their voluntary assignment; his intestate being, at the time of taking said transfer, also entitled to an account of such proceeds, as a large creditor of said Abraham and Isaac.

The right of the complainant to the relief sought by this bill is met, *in limine*, by the objection, that the transfer of the claim upon which it is founded, is void as against public policy, on

the ground of champerty or maintenance ; the transfer being, in truth, as it is alleged, a transfer of a claim for a tort or wrong.

It is true, that a court of equity will not, any more than a court of law, encourage by its process the commission of the offence of maintenance, but on the contrary, will refuse to enforce a contract which it sees to be tainted with it. The transfer objected to on this ground, was, however, made by those authorized under their trust to make it, to one already largely interested as a creditor, under the assignment, in the claim transferred ; and may be regarded, as a mode properly adopted by the plaintiff's intestate,—as the only one under the circumstances of the trustees, by which he and they could realize, for the mutual benefit of all concerned, what might be justly due to them. The cases of *Hartley* v. *Russell*, 2 Sim. & Stu. 244, *Hunter* v. *Daniel*, 4 Hare, 431, and the remarks of Chancellor Walworth in *Ward* v. *Van Bokelen*, 2 Paige, 295, sufficiently indicate, that the taint of maintenance is not deemed, in a court of equity, to extend to a fair *bonâ fide* purchase of a chose in action, made for the purpose of securing or recovering payment of an antecedent debt, especially where, as in this case, the purchaser was already beneficially interested in the very claim by him purchased. We must ignore, too, all distinctions, if we confound, under such circumstances, an assignment of a balance due from a trustee who has neglected to account, with a purchase by a stranger of a claim for damages for an ordinary tort.

The bill states, that the plaintiff's intestate was a creditor of Abraham & Isaac Wilkinson at the time of his purchase of this balance, and joins Barney, one of the surviving assignees from whom the purchase was made, as a plaintiff, and Fessenden, the other, as a defendant, which gives rise to two other objections to the bill ; 1st, that it is multifarious, and 2d, that Fessenden should have been joined as a plaintiff in the bill, instead of being made, as he is, a defendant to it.

The first of these objections proceeds upon the notion, that the plaintiff, as the administrator of George Wilkinson, claims an account upon two distinct grounds : one, that his intestate

8 *

was a creditor of Abraham & Isaac Wilkinson, entitled to an account as such by virtue of their assignment, and the other, that his intestate was entitled to it by virtue of the transfer to him by the assignees of Abraham & Isaac Wilkinson of the balance due from William Wilkinson, as mortgagee, to the assigned fund; and that, by making Barney, one of the assignees who joined in the transfer, a party plaintiff, he also is to be considered as claiming an account, as assignee of Abraham & Isaac Wilkinson.

Without looking farther for an answer to this objection, it is enough to say, that it proceeds upon a strained and unfair construction of the bill. The bill states, indeed, that George Wilkinson, as a creditor of Abraham & Isaac Wilkinson, whose claim was embraced by their assignment, was entitled to an account of this balance; but that after waiting some time subsequent to the death of William Wilkinson, in the hope that the assignees of Abraham and Isaac would pursue the estate of William for it, he took an assignment of this balance, by way of purchase, to himself; and the only relief specially prayed in the bill, which is the true test, is, that upon the ground of *this assignment,* payment of the assigned fund may be decreed to the plaintiff's representative. His claim, as a creditor under the assignment, is not, therefore, stated in the bill as the ground upon which an account is asked to be awarded to him, but rather as the reason and excuse for his taking the assignment; sufficient too, as we have before considered, and therefore properly stated, to exculpate the transaction from the charge of maintenance. So again, although Barney, one of the surviving assignees of Abraham & Isaac Wilkinson who joined in the transfer to the plaintiff's intestate, is made a plaintiff, no relief is asked for him; and thus this objection of multifariousness falls to the ground.

The other objection just mentioned, to wit, that Fessenden, as well as Barney, should have been joined as a plaintiff in this bill, is equally without foundation. The assignment we are considering, was not of a *legal* chose in action, but of an equitable interest, in the nature of a *chose in action;* and it is difficult to perceive, the assignment being absolute, the necessity of making

either of the assignors of the *chose*, parties to the bill. 1 Dan. Ch. Pract. 254; *Blake* v. *Jones*, 3 Anstr. 651. They are, at best, but nominal parties, in favor of whom no decree is asked or can be made; and if, in such a case as this, it be any objection that they are joined as parties at all, the misjoinder of the one as plaintiff, inasmuch as it does not materially affect the decree, can only be taken advantage of by demurrer, and the misjoinder of the other, as defendant, can only be taken advantage of in the same mode, and by *him;* and neither misjoinder can be reserved until the final hearing. Story, Eq. Pl. 544 and notes; 1 Dan. Ch. Pract. 350 and notes.

Another defence to the maintenance of this bill is, that a bill for the same matter was dismissed by this court, generally and with costs, at the March term, 1853. It appears by the record, that before any replication was filed, and before hearing, the plaintiff, having moved that his bill be dismissed, without prejudice, on the ground of a defect of parties and also of the conveyance under which he claimed his account, the bill was dismissed generally, with costs. It is only a dismissal after hearing upon the merits, which, according to the general practice of the court, can be pleaded in bar to a new bill for the same matter; *Jenkins* v. *Eldridge*, 3 Story, 319; 2 Dan. Ch. Pract. 753; and certainly, the dismissal of a bill with costs, upon the plaintiff's own motion before a hearing, which is his right, was never supposed to constitute a bar to a new bill. 2 Dan. Ch. Pract. 929. The entry, "dismissed with costs," is sufficiently explained by the state of the pleadings in the case at the time of its dismissal, as well as by the accompanying motion of the plaintiff; and if it were not, we know no rule of law, or practice, which would prevent a party from aiding or explaining a record produced by or against him, by averments and proofs in perfect consistency with it. Besides, upon examination of the bill dismissed by this court in 1853, and a comparison of it with the bill now before us, it appears that it was not for the same matter; that bill being founded upon a conveyance of the claim here sought to be enforced, which was inoperative, because executed by only *one* of the two surviving assignees of Abraham & Isaac Wilkinson; whereas, this is founded upon a new title to the claim

sought to be enforced, gained by a conveyance executed by *both* the surviving assignees. Upon either of these grounds, this defence is not maintainable.

But the main ground upon which the defence to this bill has been pressed, is, the lapse of time occurring between the accruing of the liability sought to be enforced by it and the commencement of proceedings—a period of upwards of twenty years, reckoning from the time of the sale of the mortgaged property by William Wilkinson to the filing of the first bill in this court, and of upwards of twenty-five years, reckoning from the same time to the filing of this bill. In every mode in which time can operate to bar an equitable remedy, whether by force of the statute of limitations, on the equitable ground of laches of the complainant and staleness of the demand, or as affording presumptive evidence of the settlement of the account now sought to be opened, it has been brought to our attention at the hearing, as disentitling the plaintiff to relief; and certainly, when, as here, the account is not asked until the death of the party most able to render it, we are disposed to give to the lapse of time all the effect, which the settled rules of the system of jurisprudence we are administering will permit.

The facts of this case, to which the defence from lapse of time is sought to be applied, lie within a very narrow compass. A day or two before their failure, and as a part, no doubt, of their preparation for it, Abraham & Isaac Wilkinson mortgaged the property, an account of the proceeds of the sale of which is sought by this bill, to their brother William, the defendant's intestate, with a power of sale, to secure him as their indorser; and immediately afterwards assigned the same, subject to the mortgages, with other property, to William, as a joint assignee with Nathaniel Searle, Hiram M. Barney, and Benjamin Fessenden, for the benefit of the creditors of the assignors. William Wilkinson did not, under his power, sell the mortgaged property until about two years after he had accepted the trust of the above assignment; so that at the time when the proceeds of sale came to his hands for his own relief as indorser, and for payment of the surplus, if any, to the creditors of A. & I. Wilkinson, that is, at the

time he became accountable for the proceeds of sale, he occupied the double position, of the party to account, in his character of mortgagee, and of the party to be accounted with in the first instance, as co-assignee. From the nature of legal remedies, no action at law would lie against him to recover any surplus of these proceeds which might remain in his hands, either at the suit of his co-assignees, or of the creditors entitled under the assignment. When it is said by the counsel for the respondent, that William Wilkinson was suable at law, for these proceeds, in the old common-law action of account, he forgot that by the common law, this action required for its maintenance a privity of contract between the parties to it, which was never recognized as growing out of the mere relation of co-tenants or co-trustees; (F. N. B. 118; Co. Lit. 172 *a*, 186 *a*, 200 *b*; 1 Vin. Abr. tit. Account C.;) and that the extension of this remedy to parties thus related, both here and in England, is by statute, and as to the latter, partial only—not including co-trustees under trusts created by deed. Occupying this double position then, William Wilkinson, in the view of the law, held the surplus, if any, of these proceeds of sale, as a trustee under the express technical trust of the assignment of A. & I. Wilkinson, for which he was accountable to the creditors beneficially interested therein, or to his co-trustees, only in equity. Against accountability under such a trust, it is well settled, that the statute of limitations does not run in a court of equity, as it does against accountability under a legal trust, or one enforceable also by an action of law. Nor will delay to call him to account, in general, unless indeed it be very long, avail such a trustee, either against the body of creditors entitled, or against his co-trustees, on the ground of *laches;* since it is far more imperative upon him, under such circumstances as those here proved, from his superior knowledge of the state of the transaction, to render an account, than upon them to compel him to do so. Several years elapsed after the assumption of this trust, according to the account presented by the respondent, during which his intestate was occupied in selling the property and applying the proceeds in liquidation of the claims, made by the terms of the mortgages to him a lien upon it; in other words, in ascertaining the amount for

which he would be accountable to his co-trustees, and responsible to the creditors under the assignment. In the mean time, and within a year after his sale of the mortgaged property, the controlling assignee, Searle, died, and Barney removed to the West, and ceased from that time to act in the trust; leaving only himself and Fessenden to look after the interests of the creditors under it. It not only does not appear in proof that Fessenden was apprised of the state of the accounts between the defendant's intestate and the assigned estate, but it is expressly proved by him that he had no knowledge upon the subject, and that the defendant's intestate did not communicate with him upon it. These facts, even if we throw out of view the equities of the body of creditors, to whom laches would not be imputed, as not represented in the claim made by the plaintiff, bear strongly upon the question of the comparative laches of the defendant's intestate and his co-trustees, and conclusively rebut any presumption which might arise, from the lapse of time, that this account has been settled between them. The complainant is entitled therefore to an account of the proceeds of sale assigned to his intestate, and the case must go to a master, for the purpose of taking it. *Decree accordingly.*